ERVIN, Justice
(dissenting):
This cause involves an interlocutory review pursuant to Article V, Section 4(2) of the Florida Constitution, F.S.A.,[1] and Rule 4.2(a), Florida Appellate Rules, 31 F.S.A. I conclude that the court below has directly passed upon the validity of a state statute, and the jurisdiction of this Court has been properly invoked.
On March 2, 1945 the Rivers and Harbors Act was enacted and, as such, authorized, inter alia, the deepening and widening of the Intracoastal Waterway from Jacksonville, Florida to Miami, Florida. In March of 1963 the Appellants, Mr. and Mrs. E. W. Vanstone, citizens and residents of Toronto, Canada, gave to the United States a “temporary spoil disposal easement” on a parcel of real estate they owned in Broward County, Florida near Fort Lauderdale known as “Island B” situated in the Intracoastal Waterway. The parcel of land was then a natural island, overgrown with trees. The Federal dredging project reached the vicinity of the island in question in March of 1964. The actual dredging work had been awarded by competitive contract to a private dredging company. Sand and other spoil material dredged thereunder were deposited on Island “B”. They rose to a height of approximately thirty feet.
On July 21, 1965 the Appellees, owners of residences located on property situated to the south and southeast of said island, instituted this suit. The complaint, initiated in the Circuit Court of the Seventeenth Judicial Circuit, alleged, inter alia, that the sand and other spoil material had been deposited on the island to such a height that it blocked the Appellees’ view of the Intracoastal Waterway depriving Appellees of their riparian rights to an unobstructed view of same. Appellees also alleged that said island constituted a nuisance for the reason that it is located immediately adjacent to a residential area of a rather luxurious and expensive nature and that sand and other spoil material from the island were continually blown upon the property, buildings, homes and swimming pools of the three Appellees. The complaint prayed for a mandatory injunction directing Appellants to remove the spoil which had been deposited and have said island leveled. In the alternative the suit requested the appointment of a receiver to take custody, control and possession of the island and achieve the prayed for relief in the event the Appellants failed to do so.
Service upon the non-resident Appellants was effected under the provisions of F.S. Ch. 48, F.S.A., the constructive service statute. The Appellants filed defensive motions, asserting several constitutional grounds, which were denied. Subsequent to this denial Appellants filed their answer and at the same time filed a motion for summary final decree on the constitutional questions exclusively, as presented in the previous affirmative defenses. The court below denied Appellants’ motion for sum *428 mary judgment and specifically noted that the denial was based upon legal and constitutional grounds.
The affirmative defense and constitutional question posed by Appellants upon which attention is focused is the one which alleges the unconstitutionality of F.S. Sec. 48.01(10), F.S.A. This is done because our jurisdiction to review the cause rests upon this predicate. The language of the defense is, quoting as set forth by Appellants, as follows:
“If Chapter 48, F.S. ’65 [F.S.A.] be so construed by this Court as to give jurisdiction over the person of the defendants predicated upon constructive service of process for the purposes described in the complaint, then such construction does violence and is offensive to the Due Process of Law Clause and Equal Protection of the Laws Clause of the Federal and State constitutions, especially Section 12, Declaration of Rights of the Constitution of the State of Florida.”
The Circuit Court’s denial of the Appellants’ motion for summary judgment specifically states it is “on constitutional questions,” in the face of the challenge to the statute’s constitutionality by said defenses and motions. Such denial has the effect of holding that F.S. Sec. 48.01, F. S.A., is valid as applied to the Appellants, citizens and residents of a foreign country. .
F.S. Section 48.01, F.S.A., sets forth the circumstances in which service of process by publication, known as constructive service, may be used. The statute has ten sub-paragraphs with the tenth being somewhat of a catch-all that allows constructive service
“[i]n any other suit or proceeding, not hereinabove expressly mentioned, wherein-personal service of process or notice is not required by the statutes or constitution of this state or by the constitution of the United States.”
It appears that it is upon this subpara-graph that the lower court held that constructive service of process could be utilized against citizens and residents of a foreign country, to wit, Canada. The Appellees seek a mandatory injunction to compel Appellants at the latters’ expense to undo an act done by the Federal Government in pursuance of an Act of Congress. Inasmuch as the judgment sought would be directed against specific persons, to wit, the Appellants, this is an in personam action. It is elementary that in actions in personam in which a personal judgment is sought, personal service of process on the defendant is required. See 42 Am.Jur., Process § 49; also, 25 Fla.Jur., § 22. The general rule is, as quoted from 25 Fla.Jur., p. 396,
“That jurisdiction over the person of a nonresident of the state, sufficient to authorize the court to render a personal judgment against such nonresident, can be acquired only by personal service of process within the territorial jurisdiction of the Court by whose order or judgment his personal liability is to be ascertained and fixed, unless he waives service of process by his voluntary appearance or consents to or accepts some form other than personal service. Under this rule a personal judgment without personal service on a nonresident defendant who does not appear or otherwise waive such service is regarded as void as obtained without due process of law.”
It is clear that the instant cause does not come within the ambit of certain recognized exceptions to the necessity for personal service in in personam actions. None of our State’s “Long Arm” statutes are properly available to reach out and draw the Appellants into the grasp of constitutionally appropriate jurisdiction for the present cause. The mandatory injunction relief sought, either directly against the Appellants or by indirect receivership, is a personal judgment. Jurisdiction of the person is an essential condition precedent to entry of such a judgment. Absent personal service, the relief sought cannot be *429 granted. Under these circumstances the Appellants’ motion for'summary final decree should have been granted and the cause dismissed. It is useless to remand for further relief proceedings since a personal judgment is sought and in the posture of the cause we have for review no personal service has been obtained.
I am well aware that in controversies relating to real property adjudicated in the circuit courts a method for constructive or substituted service had been provided if personal service of process is impossible. Such procedure, however, involves actions that are in rem or quasi in rem, and may not be extended so as to envelop in per-sonam actions. In the instant case we are not concerned with adjudication of adverse rights of the parties in regard to "Island B” as property; rather, we are dealing with a situation in which a judgment is sought which would be specifically directed against the “persons” of the Appellants. In view of this, I agree with the contention of the Appellants that constructive service can not legally support the mandatory injunction sought in the present in personam action. Also, the novel suggestion by the Appellee that the same result may be achieved through the appointment of a receiver to take custody, control and possession of Appellants’ land and level it at the land’s expense by impressing a lien for such expense on the land is little more than a tactical attempt to do by indirection that which Appellees can not legally have the courts do directly. In the particular circumstances any action by a receiver and expenses incurred by him would directly relate back to the Appellants.
Our state has several explicit statutes referring to nuisance situations and detailing the procedures for “abating” or otherwise dealing with the same through actions by individuals or public officials. See, for example, F.S. Ch. 823, F.S.A. None of these statutes as they have been interpreted appear to comtemplate that the depositing of spoil material in the manner and place alleged from dredged governmental project areas with the alleged resultant effect constitutes a nuisance abatable in the manner Appellees seek.
The alleged interference with Appellees’ view or light, as well as the injury to their premises from sand blown' off the spoil conceivable might be abatable had Appellants been the causative agents. See 39 Am.Jur., Nuisances, §§ 60, 61, and 1 Am. Jur.2d, Adjoining Landowners, §§ 11, 27, 28. But it was the Federal government that dredged and deposited the spoil material as a part of the necessary work of a duly authorised governmental project. It was essential to the success of the project that the spoil material dredged be deposited somewhere. It lay within the power of the Government by condemnation, gift or purchase to acquire the right to deposit the spoil on “Island B.” It follows, I believe, that whatever injury or damage may have resulted under the described circumstances to the third party Appellees as a consequence or incident to the use of “Island B” for the depositing of the spoil material is not directly attributable to Appellants. See 39 Am.Jur., Nuisances, §§ 203, 205. The mere fact that they granted the spoil easement to the Government and gave it a right which the Government could have obtained by condemnation does not ipso facto render them guilty of maintaining a nuisance. It would seem to be a contradiction of reason if private owners could be held responsible for damages and injuries consequentially resulting from the legitimate public use of their lands or easements thereon for authorized governmental purposes. Moreover, rendering private owners or their lands subject to such liability would seriously retard and handicap the ability of the government to carry forward public improvement projects. Although the spoil easement was temporary in duration it does not follow that Appellants are responsible for the continuing nature of the alleged nuisance. It might be they could be prohibited on equitable grounds from interfering with corrective *430 measures which the Government might be required to take on the island or they might be subjected to a subsequent exercise of the police power by state or local authorities designed to correct the alleged nuisance in the interest of the general public since latent police power is inherent and never rendered impotent by actions or conditions originally legitimate — but in the present case I think for the foregoing reasons it would be inequitable to grant the relief sought.
‘“That which the law grants will not constitute a nuisance per se, public or private and if the law is obeyed, no actionable wrong will result.’ [City of] Valparaiso v. Hagen, 153 Ind 337, 54 NE 1062, 48 LRA 707, 74 Am St Rep 305.
“That which is done under authority of law at a place and in a manner authorized cannot be a nuisance. Atchison, T. & S. F. R. Co. v. Armstrong, 71 Kan. 366, 80 P. 978, 1 LRA(NS) 113, 114 Am St Rep 474.” (39 Am.Jur. Nuisances, § 203, p. 479, n. 4.)
“Where the doing of a thing that would otherwise be a public nuisance is authorized by the legislature, the doing of that thing by the person so authorized, in the manner and for the purpose authorized, cannot constitute a public nuisance in the absence of negligence. State v. Erie R. Co. 84 NLJ 661, 87 A 141, 46 LRA (NS) 117.”
I further feel that we would far exceed the proper scope of legal concepts were we to improvise a holding that would have the effect of putting the Appellants and the Federal government in a principal-agent relationship and, as such, hold the principal (Appellants) liable for the acts of his agent (Federal government). I believe hat we would be credulous should we so hold.
My view is that F.S. § 48.01(10), F.S.A., can not be utilized to attain jurisdiction over nonresidents by constructive service of process to support a decree or judgment in personam against said nonresidents, either directly or indirectly through a receiver. However, I do not mean to imply that state or local agencies do not have potential authority under the police power to regulate in situations of this kind. I simply hold that in the precise case reviewed the present suit seeking in personam remedies for the reasons stated cannot be maintained.

. Art. V., § 4(2) of the Florida Constitution provides in part: “The supreme court may directly review by certiorari interlocutory orders or decrees . passing upon chancery matters which upon final decree would be directly appealable to the supreme court. In all direct appeals and interlocutory reviews by certiorari, the supreme court shall have such jurisdiction as may be necessary to complete determination of the cause on review.” (emphasis supplied)